IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35002-9-III |
| | ) | (consolidated with |
| Petitioner, | ) | No. 35003-7-III) |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| JENA DALE BROOKS, | ) | |
| | ) | |
| Respondent. | ) | |

PENNELL, J. — Washington's traffic code prohibits operating a vehicle on any part of a highway that does not meet the statutory definition of a roadway. Jena Brooks's car was stopped for violating this provision after it crossed a neutral area separating a highway onramp from an adjacent lane of travel. Because the neutral area does not meet the definition of a roadway, the stop was permissible. The superior court's ruling to the contrary is therefore reversed.

BACKGROUND

While merging onto westbound U.S. Route 97 from U.S. Route 2 in Chelan

County, Jena Brooks's car crossed over a portion of

the highway designated as a "neutral area." A neutral

area is a paved triangular space separating an

entrance or exit ramp from an adjacent lane of

highway. The neutral area between Route 97 and its

merger with westbound Route 2 is marked on each

side by thick white channelizing lines. Figure 1 is a

depiction of a neutral area similar to the one crossed

by Ms. Brooks.[1]

Figure 1

A Washington State Patrol trooper observed

Ms. Brooks's vehicular activity and performed a traffic stop. Ms. Brooks was ultimately

arrested for driving on a suspended license and other misdemeanor offenses.

During proceedings in district court, Ms. Brooks filed a motion to suppress,

arguing her vehicle had been stopped without cause. The motion was denied. Pertinent

---

[1] FED. HIGHWAY ADMIN., U.S. DEP'T OF TRANSP., MANUAL ON UNIFORM TRAFFIC CONTROL DEVICES FOR STREETS AND HIGHWAYS fig.3B-9, at 360 (2009 ed., rev. May 2012).

to this appeal, the district court ruled Ms. Brooks's merger over the highway's neutral

area constituted "driving with wheels off roadway," in violation of RCW 46.61.670. [2]

Ms. Brooks was subsequently convicted of several misdemeanor offenses after a jury

trial.

Ms. Brooks successfully appealed the suppression ruling to the superior court.

It found Washington's definition of a roadway ambiguous in the context of a highway's

neutral area. The superior court then invoked the rule of lenity and determined Ms.

Brooks should not have been stopped for driving with wheels off the roadway in violation

of RCW 46.61.670.

The State sought discretionary review from this court. Review was granted on two

specific issues: (1) whether the term roadway is ambiguous in the current context, and

(2) if the term is ambiguous, whether the rule of lenity is an available tool of statutory

construction that might benefit a defendant such as Ms. Brooks.

ANALYSIS

Discerning the meaning of the term "roadway," as used in RCW 46.61.670, is a

---

[2] "**Driving with wheels off roadway.** It shall be unlawful to operate or drive any vehicle or combination of vehicles over or along any pavement or gravel or crushed rock surface on a public highway with one wheel or all of the wheels off the roadway thereof, except as permitted by RCW 46.61.428 or for the purpose of stopping off such roadway, or having stopped thereat, for proceeding back onto the pavement, gravel or crushed rock surface thereof." RCW 46.61.670.

matter of statutory interpretation. As such, our review is de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). We focus our statutory interpretation analysis on the language used by the legislature. *In re Marriage of Schneider*, 173 Wn.2d 353, 363, 268 P.3d 215 (2011). Resources such as dictionaries may be used to decipher a statute's plain meaning. *Cornu-Labat v. Hosp. Dist. No. 2*, 177 Wn.2d 221, 231, 298 P.3d 741 (2013). However, we will not resort to aides of construction such as legislative history and (perhaps) the rule of lenity unless we first find the legislature's language truly ambiguous. *Timberline Air Serv. Inc. v. Bell Helicopter-Textron, Inc.*, 125 Wn.2d 305, 312, 884 P.2d 920 (1994); *State v. Conover*, 183 Wn.2d 706, 712, 355 P.3d 1093 (2015).

Interpreting the term "roadway" begins with the relevant statutory text. Title 46 RCW defines "roadway" as "that portion of a highway improved, designed, or ordinarily used for vehicular travel, exclusive of the sidewalk or shoulder even though such sidewalk or shoulder is used by persons riding bicycles." RCW 46.04.500.

The statutory definition of a roadway involves a two-part inquiry. First, we ask whether a given portion of highway meets the triggering definition of a roadway. In other words, is the area improved, designed, or ordinarily used for vehicular travel? If not, the inquiry ends. The area is not a roadway. But if at least one of the three triggering definitions applies, we go on to ask whether the area is excluded from the scope of a

roadway because the area constitutes a sidewalk or shoulder. If neither exclusion applies, then the area in question falls under the legislature's definition of a roadway.

Of the three triggering definitions, highway design is the least indicative of roadway status in the current context. A highway's neutral area is not a vehicle lane. It is too short to facilitate meaningful travel. And its triangular shape cannot consistently accommodate the size of a vehicle. Rather than being designed for vehicular travel, it is apparent the neutral area is designed as a buffer zone. It keeps vehicles separate so as to facilitate speed adjustment and, in the context of a highway onramp, safe vehicle merging.

National standards set by the Manual on Uniform Traffic Control Devices for Streets and Highways confirm our observations about the apparent design purpose of a highway's neutral area. FED. HIGHWAY ADMIN., U.S. DEP'T OF TRANSP., MANUAL ON UNIFORM TRAFFIC CONTROL DEVICES FOR STREETS AND HIGHWAYS (2009 ed., rev. May 2012) (MUTCD).[3] The MUTCD refers to the neutral area as an "island." MUTCD, § 3I.02, at 430. As such, it is an area intended for vehicle "separation."

---

[3] The MUTCD is the national standard for traffic control signals on public highways and has been adopted by Washington's secretary of transportation. RCW 47.36.020; WAC 468-95-010. Therefore, it is an appropriate guide to interpreting the meaning of traffic control devices, such as pavement markings, used on public highways within our state. The complete MUTCD is available online at https://mutcd.fhwa.dot.gov/pdfs/2009r1r2/mutcd2009r1r2edition.pdf.

MUTCD, § 1A.13(03)(98), at 15. Although a neutral area may be designated either by a wide or double solid white channelizing line (MUTCD, §§ 1A.13(03)(29), at 12, 1A.13(03)(124), at 17), the two options carry no substantive significance. Like a double white line, a solid white line can serve as an indicator that crossing is prohibited. MUTCD, § 3A.06(01)(B) at 348.[4] The whole point of a neutral area is to exclude vehicles and promote orderly and efficient traffic flow. MUTCD, §§ 3B.05(06), at 370, 3I.02(02), at 430.

Ms. Brooks claims the neutral area meets the first triggering roadway definition—improvement for vehicular travel—because the area is paved. We disagree. Although the neutral area is an improved piece of land, it is not improved for purposes of vehicular travel. As noted, the purpose of the neutral area is to provide a safe space between vehicles. The MUTCD contemplates using a variety of improvements to alert drivers to the presence of the neutral area. At the very least, the improvements must include pavement and solid white lines. MUTCD, §§ 1A.13(03)(29), at 12, 1A.13(03)(124), at 17. But additional options may also be used, such as internal crosshatching, reflective

---

[4] A solid white line indicates crossing is discouraged, rather than prohibited, when used as a lane line marking. MUTCD, §§ 3B.04(20), at 362, 3B.05, at 370. However, the lines demarking a neutral area are channelizing lines, not lane lines. MUTCD, § 1A.13(03)(124), at 17. Channelizing lines designate the presence of an island, not a lane of travel. MUTCD, § 1A.13(03)(29), at 12.

marks, or rumble strips.  MUTCD, § 3B.05(10), at 371, ch. 3I, at 430-31.  These

improvements do not exist for the purpose of facilitating travel.  Quite the opposite.  The

purpose of a marked and improved neutral area is to make drivers aware of the buffer

zone and keep vehicles out so traffic can merge or exit safely and efficiently.

Pavement is not, in and of itself, a sufficient indicator that an area has been

improved for vehicular travel.  In the context of highway construction, pavement can

serve a variety of purposes.  In addition to allowing for heightened visibility of traffic

control markings, pavement can help with drainage and structural integrity.  While paving

constitutes an improvement to the natural landscape, it is not necessarily an improvement

for purposes of vehicular travel.  Because a highway's paved neutral area does not

amount to an improvement for purposes of vehicular travel, the mere existence of

pavement does not qualify the area as a roadway.

With respect to the third triggering definition of a roadway—regular use—there is

no evidence vehicles regularly violate the intended purposes of neutral areas and use the

space for vehicular travel.  Unlike a highway shoulder, which can provide a safe passage

for small vehicles such as bicycles, the neutral area is not regularly amenable to safe

vehicular travel.  *See* Clerk's Papers at 59 (noting safety hazards of crossing the neutral

area).  Some neutral areas may be used for toll collection or pedestrian refuge.  MUTCD,

§ 1A.13(03)(98), at 15.  But we find no indication of any regular, acceptable use of

neutral areas by vehicles involved in travel.

Because the neutral area is neither designed, improved, nor regularly used for vehicular travel, it does not meet any of the three triggering definitions of a roadway. Our inquiry, therefore, ends here. We need not address whether the neutral area should be excluded as a shoulder or whether the rule of lenity is applicable in the context of Washington's traffic code.

## CONCLUSION

In crossing over the neutral area between Route 97 and Route 2, Ms. Brooks failed to maintain her vehicle wheels on an area of the highway meeting the statutory definition of a roadway. A vehicle stop was therefore permitted under Washington's wheels off roadway statute, RCW 46.61.670.

The superior court's order on appeal from the district court is reversed.

Pennell, J.

I CONCUR:

Siddoway, J.

8

No. 35002-9-III
(consolidated with
No. 35003-7-III)

LAWRENCE-BERREY, A.C.J. (concurring) — I agree with the majority that the

trooper had reasonable suspicion to stop Ms. Brooks. But I disagree with the majority

that driving in the middle of the roadway amounts to "driving with wheels off roadway."

I therefore concur.

A.    OUR GRANT OF REVIEW INCLUDES WHETHER CROSSING THE NEUTRAL AREA
      VIOLATES RCW 46.61.050

The majority asserts that we granted discretionary review of only two issues. I

disagree.

The State sought discretionary review of five issues. The first was, "Did the

superior court err as a matter of law when it decided that crossing [the neutral area] does

not violate RCW 46.61.050 (failure to obey traffic control device)?" Mot. for Discr.

Review at 1.

Our commissioner issued a written ruling. The ruling notes that the superior court

determined that Ms. Brooks did not violate either RCW 46.61.050 (failure to obey traffic

control devices) or RCW 46.61.670 (driving with wheels off roadway). The ruling then

discusses the ambiguity of whether the neutral area is a shoulder and, therefore, excluded

from the definition of "roadway," and whether the rule of lenity applies to resolve this

ambiguity in favor of Ms. Brooks. After concluding that the ambiguity and the

application of the rule of lenity are issues of public importance, the ruling states:

"Accordingly, IT IS ORDERED . . . the State's motion for discretionary review is

granted." Commissioner's Ruling, *State v. Brooks*, No. 35002-9-III, at 4 (Wash. Ct. App.

Mar. 7, 2017). There is no language within the order that limits the scope of review to

only two issues.

The State briefed all five issues contained within its motion for discretionary

review. Ms. Brooks took the position in her responsive brief that discretionary review

was limited to two issues. Nevertheless, she responded to each of the five issues. During

oral argument, this panel asked questions concerning RCW 46.61.050, and both parties

answered our questions. There is no reason to limit our review to only two issues when

our commissioner's order did not. It is therefore appropriate to review whether crossing

the neutral area violates RCW 46.61.050.

B. CROSSING THE WIDE SOLID LINES THAT BORDER THE NEUTRAL AREA VIOLATES
RCW 46.61.050

The superior court analyzed the 2009 Manual on Uniform Traffic Control Devices

for Streets and Highways (MUTCD) and concluded that crossing the wide solid lines was

discouraged rather than prohibited. I disagree.

RCW 46.61.050(1) requires drivers, bicyclists, and pedestrians to obey traffic

control devices. RCW 46.04.611 defines "traffic-control devices" as "all signs, signals,

markings and devices . . . placed or erected . . . for the purpose of regulating, warning or

guiding traffic." Here, the white channelizing lines crossed by Ms. Brooks were wide solid lines. Such markings constitute traffic control devices.

The MUTCD sets forth the functions of longitudinal markings. FED. HIGHWAY ADMIN., U.S. DEP'T OF TRANSP., MANUAL ON UNIFORM TRAFFIC CONTROL DEVICES FOR STREETS AND HIGHWAYS (2009 ed., rev. May 2012). According to section 3A.06.01(B) of the MUTCD, "A solid line discourages or prohibits crossing (depending on the specific application)." Just below that section, section 3A.06.03 clarifies, "The width of the line indicates the degree of emphasis." For this reason, crossing a *wide* solid line is prohibited.

C.    DRIVING THROUGH THE NEUTRAL AREA IS NOT DRIVING WITH WHEELS OFF ROADWAY

RCW 46.04.500 defines "roadway" as "that portion of a highway improved, designed, or ordinarily used for vehicular travel, exclusive of the sidewalk or shoulder even though such sidewalk or shoulder is used by persons riding bicycles." The majority acknowledges that the paved neutral area is an improved area of the highway, but concludes that the area is not improved *for* vehicular travel. The majority concludes that the neutral area is not improved *for* vehicular travel because the purpose of the neutral area "is to make drivers aware of the buffer zone and keep vehicles out . . . ." Majority at 7.

Drivers are made aware of the buffer zone and to keep vehicles out because the buffer zone is bounded by wide solid lines instead of, for instance, narrow broken lines.

Narrow broken lines would permit vehicles to cross through the neutral area. Because it is the longitudinal markings that tell drivers to keep out of the buffer zone, the statute that controls our analysis is RCW 46.61.050(1) (failure to obey traffic control devices), not RCW 46.61.670 (driving with wheels off roadway).

But because the majority reaches the correct result, I concur.

Lawrence-Berrey, A.C.J.